INDUSTRIAL ENERGY CONSUMERS, APPELLANT, *v.* PUBLIC
UTILITIES COMMISSION OF OHIO, APPELLEE.

[Cite as *Industrial Energy Consumers v. Pub.
Util. Comm.* (1992), 62 Ohio St.3d 440.]

(No. 90–1576—Submitted June 5, 1991—Decided February 5, 1992.)

Bell & Bentine Co., L.P.A., *Langdon D. Bell, Barth E. Royer* and *Judith B. Sanders,* for appellant.

*Lee I. Fisher,* Attorney General, *James B. Gainer, Duane W. Luckey* and *Anne L. Hammerstein,* for appellee.

*Kerry Bruce,* for intervening appellee, city of Toledo.

*William A. Spratley,* Consumers' Counsel, *Joseph P. Serio* and *Evelyn R. Robinson–McGriff,* for intervening appellee, Office of Consumers' Counsel.

---

*Per Curiam.* Appellant, Industrial Energy Consumers, first argues that the general service rate cases and the commission's self-initiated investigation into the special contract rates are separate proceedings which cannot be combined. Appellant claims that, because R.C. 4909.15(A)(1) and (D) refer to ratemaking in the context of the "service for which rates are to be fixed and determined" and "the service rendered," the general service rates in the rate proceeding must be based only on the cost to serve general service customers, that applying the excess revenues to satisfy the cost of serving general service customers would make the general service rates dependent on factors unrelated to cost, and that the excess revenues identified in the commission's investigation may only be used to reduce the special contract rates from which they were derived. Appellant claims that this rate reduction must be accomplished via the R.C. 4909.15 ratemaking formula. Accordingly, appellant asserts that the commission exceeded its statutory authority by combining the two proceedings and using the excess revenues generated by one rate to decrease the general service revenue requirement related to another rate. The commission argues that R.C. 4909.15 permits it to combine the proceedings and to set rates based upon total company revenues in order to assure that the rates set for the general service customers do not provide the company with a rate of return on its entire operations greater than the 10.55 percent that the commission has authorized. R.C. 4909.15(D) states in part:

"When the public utilities commission is of the opinion, after hearing and after making the determinations under divisions (A) and (B) of this section [*i.e.,* after computing the company's revenue requirement by the statutory formula], that any rate * * * [or] charge * * * will be * * * unreasonable * * *, the commission shall:

" * * * *

"(2) With due regard to all such other matters as are proper, according to the facts in each case,

" * * * *

"(b) * * * [F]ix and determine the just and reasonable rate * * * to be * * * charged * * * for the performance or rendition of the service that will provide the public utility the allowable gross annual revenues under division (B) of this section, and order such just and reasonable rate * * * to be substituted for the existing one. * * *" (Emphasis added.)

With regard to Columbia's five applications for an increase in general service rates, the commission found that Columbia's proposed general service rates for the five regions combined would produce a return (13.77 percent) that would exceed the 10.55 percent rate of return that the commission found reasonable in these cases. Accordingly, it fixed rates pursuant to R.C. 4909.15(D) that would afford the company the opportunity to earn a 10.55 percent rate of return. In doing so, it regarded the special contract revenues as "other matters" affecting the general service rates and revenue requirement. We agree that the statute permitted this conclusion.

Accordingly, we do not agree that the investigation conducted pursuant to R.C. 4905.26 compelled the commission to adjust only special contract rates under an R.C. 4909.15 analysis. Special contract rates are not set by the R.C. 4909.15 formula. Rather, they are the product of negotiations between Columbia and the special contract customers, subject to commission approval. The rate negotiated was $.25 per Mcf., recently augmented by a $.10 per Mcf. "take-or-pay" charge. Moreover, when a customer enters into a special contract, it does so because it has determined that it will purchase gas from an unregulated source and, presumably, that the cost of this gas plus the transportation charge under the special contract will be less than the cost of fully regulated gas purchased from Columbia. Appellant's members having voluntarily entered into this arrangement, appellant has no right to insist that its members' overall cost be further reduced by applying formula rates to transportation costs. The R.C. 4909.15 ratemaking formula simply has no necessary application here.

Appellant also argues that the commission's decision was arbitrary, capricious, and an abuse of discretion because it did not order the special contract rates reduced. Appellant contends that the special contracts are adhesion contracts and that appellant's members have no reasonable alternative other than to deal with Columbia. The commission rejected this argument. It stated that the maximum allowable special contract transportation rate is $.35 per Mcf., whereas the rate for tariffed general service transportation is approximately $1.30 per Mcf. This difference, the commission contended, makes the reasonableness of the special contract rates self-evident. Secondly, the commission reasoned that appellant could renegotiate existing contracts or gather its own cost-of-service data, which were not filed in this case, and bring

a complaint case. Moreover, the commission found these "sophisticated" consumers to be capable of determining their own risks and negotiating a reasonable price for transportation under special contracts.

Essentially, the commission found insufficient grounds to intercede in the negotiated special contracts between Columbia and appellant's members. Appellant has not demonstrated that such intercession is compelled by law. Therefore, we find that the commission's conclusion was reasonable under these facts. It was obligated under law to ensure Columbia a reasonable rate of return on its investment, not to provide appellant a better bargain than its members made for themselves. Accordingly, we hold that the commission's order distributing the "excess revenues" derived from special contracts was not arbitrary, capricious, or an abuse of discretion, and we affirm this part of the order.

*Order affirmed in part.*

Moyer, C.J., Sweeney, Holmes, Douglas, H. Brown and Resnick, JJ., concur.

Wright, J., dissents.